IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA

CIVIL ACTION NO.: 3:10-cv-228-FDW-DSC

BRIDGETREE, INC. and
TWO BIT DOG, LLC,

     *Plaintiffs,*

v.

RED F MARKETING LLC, TARGET
POINT, LLC , DANIEL ROSELLI, TENG
LI, JASON LI, MALI XU, MARK
EPPERLY and ELTON T. SCRIPTER,

     *Defendants,*

v.

BRIDGETREE, INC., MARK BECK
AND CHRIS TALLEY,

     *Counterclaim Defendants*

**AMENDED ANSWER AND
COUNTERCLAIMS OF
DEFENDANTS RED F MARKETING,
LLC, TARGET
POINT, LLC, DANIEL ROSELLI,
TENG LI, and MARK EPPERLY**

---

     Pursuant to Rules 13 and 15 of the Federal Rules of Civil Procedure, Defendants

Red F. Marketing, LLC ("Red F"), Target Point, LLC, Daniel Roselli, Teng Li, and Mark

Epperly (collectively, the "Answering Defendants"), by and through their attorney,

amend their answer and assert counterclaims as follows:

     1.     Defendants admit that Plaintiffs have brought the above-captioned action.

All other allegations are denied.

     2.     Denied.

     3.     It is admitted that Defendant Teng Li was employed by Plaintiff

Bridgetree as Vice President of Web & Data Services.  All other allegations are denied.

4.     Denied.

5.     It is admitted that on or about January 1, 2010, Daniel Roselli, Teng Li, and Mark Epperly met with Defendant Elton Scripter in a public place. All other allegations are denied.

6.     It is admitted that on or about January 4, 2010, Defendant Teng Li told Mark Beck that he was leaving Plaintiff Bridgetree's employment, and that Defendant Teng Li did, in fact, leave Plaintiff Bridgetree's employment as a Vice President on or about January 5, 2010. All other allegations are denied.

7.     Denied.

8.     It is admitted that Defendant Teng Li copied and deleted personal information that he maintained on his working laptop, including family pictures, music, personal investment information and tax returns. The Answering Defendants are without specific knowledge of the allegations of this paragraph with respect to Jason Li's Bridgetree computer but believe them to be false. Except as admitted, all other allegations are denied.

9.     The Answering Defendants are informed and believe that Mark Beck substantially owns and controls Bridgetree. The remaining allegations of this paragraph are denied for lack of information.

10.     The Answering Defendants are informed and believe that Bridgetree provides marketing data and services to its customers who seek to use those services in their businesses in various ways. The remaining allegations of this paragraph are denied for lack of information.

- 2 -

11. It is admitted upon information and belief that Plaintiff Bridgetree started an operation in Xian, China in 2007. All other allegations of this paragraph are denied for lack of information.

12. It is admitted that as part of compensation with Plaintiff Bridgetree, Defendant Teng Li was granted a 1% ownership share of Plaintiff Two Bit Dog, LLC, although Defendant Teng Li has never received any compensation for this ownership share. All other allegations are denied for lack of information.

13. It is admitted that Red F is a North Carolina limited liability company. All other allegations are denied.

14. Admitted except for Mr. Roselli's current address, which is in Charlotte, N.C, but not on Whitney Hill Road.

15. It is admitted that Defendant Teng Li left Plaintiff Bridgetree's employment on or about January 5, 2010. Defendant Teng Li's current employment information and address are admitted. Except as admitted, the allegations of this paragraph are denied.

16. It is admitted upon information and belief that Jason Li is a Chinese citizen. It is also admitted that Jason Li was employed by Bridgetree and that he reported directly to Teng Li. All other allegations are denied.

17. It is admitted upon information and belief that Mali Xu is a Chinese citizen and was employed by Bridgetree. All other allegations are denied.

18. Admitted.

19. It is admitted that Defendant Target Point, LLC, is a North Carolina limited liability company. All other allegations are denied.

20.     It is admitted that Elton Scripter is an employee of IBM and years ago worked for a short time with Bridgetree.  The remaining allegations are denied for lack of information.

21.     It is admitted that Plaintiffs have alleged federal statutory claims that invoke the subject matter jurisdiction of this Court.  The Answering Defendants deny that Plaintiffs are entitled to maintain or recover against them for any of those claims.

22.     It is admitted that the Court has personal jurisdiction over the Answering Defendants. These defendants, based upon information and belief, believe that the Court has no personal jurisdiction over the other defendants who are Chinese citizens.  All other allegations are denied upon information and belief.

23.     The Answering Defendants admit that venue is proper in this District. Except as admitted the allegations of this paragraph are denied.

24.     Denied.  It is specifically denied that the alleged  "know-how," "software," and "information related to how Bridgetree's overseas operations are organized to work with Bridgetree's U.S. operations" are trade secrets, or that Plaintiffs somehow "stole" these alleged trade secrets.  It is also specifically denied that Answering Defendants "stole" any of Plaintiff Bridgetree's allegedly proprietary information.

25.     It is admitted that Bridgetree's business is based in the United States and that it also has overseas offices in China and India. The allegations related to Bridgetree's expenditures are denied for lack of information.  Except as admitted, the allegations of this paragraph are denied.

26. It is admitted that lists of those likely to be involved in changing residences (pre-mover lists) can be valuable to marketers and that businesses use various methods to identify and compile pre-mover lists. All other allegations are denied.

27. Denied. It is specifically denied that Plaintiff Bridgetree has a "propriety system" for compiling pre-mover lists, or that Bridgetree's "system" is a trade secret. Plaintiff Bridgetree's pre-mover services use methods that are generally known in the industry or readily ascertainable through independent development or reverse engineering.

28. It is admitted Bridgetree used employees in the United States and its overseas offices in its business. Further, it is admitted that Bridgetree employees in China used part of the programming codes in their work. Except as admitted, the allegations of this paragraph are denied.

29. Admitted as a general statement of the desire of marketers to target specific customers when possible and a common process for direct mail marketing of using printers to prepare marketing materials. Except as admitted the allegations of this paragraph are denied.

30. Denied. It is specifically denied that Plaintiff Bridgetree's print on-demand service is a "custom" system that is not generally known in the industry or readily ascertainable through independent development or reverse engineering. Numerous companies offer these services to their customers.

31. Denied. It is specifically denied that Plaintiff Bridgetree's print on-demand "system" is a trade secret that is not generally known in the industry or readily ascertainable through independent development or reverse engineering.

32.     It is admitted Bridgetree used employees in the United States and its overseas offices in its business.  Except as admitted, the allegations of this paragraph are denied.

33.     Denied.

34.     The details of Bridgetree's business are denied for lack of information.  It is specifically denied that Plaintiff Bridgetree's "Integration Procedures" of overseas operations are trade secrets that are not generally known in the industry or readily ascertainable through independent development or reverse engineering.

35.     It is admitted that Plaintiff Bridgetree operated a facility in Xian, China, and that Defendant Teng Li worked with the employees of that facility.  All other allegations are denied.

36.     It is admitted upon information and belief that the National Consumer Database is a large marketing database in the United States. Except as admitted, the allegations of this paragraph are denied.

37.     It is admitted upon information and belief that Bridgetree pays licensing fees for access to the National Consumer Database.  Except as admitted, the allegations are denied for lack of information.

38.     Denied for lack of information.

39.     It is admitted upon information and belief that the server was hosted by a third party and there was a web interface for it.  All other allegations are denied for lack of information.

40.     It is admitted upon information and belief that access requires login. All other allegations are denied for lack of information.

41.     It is admitted that Defendant Teng Li is an American citizen with a Ph.D. in statistics from Univ. of Md, Baltimore County. It is admitted that Defendant Teng Li was hired in 2003 and later promoted to Vice President of Web & Data Services of Bridgetree. All other allegations are denied.

42.     It is admitted that Teng Li reported to Beck directly. It is also admitted that Beck used Teng Li's technical expertise. All other allegations are denied. It is specifically denied that Defendant Teng Li had "substantial dominion and control" over Plaintiff Bridgetree's operations.

43.     Denied for lack of information. It is specifically denied that Defendant Teng Li was "heir apparent to Beck in control of the day to day operation of the business."

44.     It is admitted that Defendant Teng Li executed business decisions subject to Mark Beck's control and approval related to an operational group and that Plaintiff Bridgetree's pre-mover team was a part of this group. All other allegations are denied.

45.     It is admitted that Defendant Teng Li had access to systems necessary for the operational group in which he was involved. All other allegations are denied. It is specifically denied that Defendant Teng Li "was the only Bridgetree employee with full and complete access to all of Bridgetree's information and information technology in addition to Beck."

46.     Denied. The decentralized nature of the Bridgetree technology system was in place before Teng Li became employed by Bridgetree.

47.     It is admitted that Defendant Teng Li helped Beck draft security policies for Plaintiff Bridgetree, but no draft policies had been fully implemented when he left

Plaintiff Bridgetree's employment. It is admitted that Defendant Teng Li's draft security policies included in various circumstances need-to-know access. All other allegations are denied.

48. It is admitted that Defendant Teng Li had the information necessary for his employment with Plaintiff Bridgetree. All other allegations are denied or are legal conclusions and assertions that require no response at this time.

49. It is admitted upon information and belief that Defendant Jason Li worked in Plaintiff Bridgetree's Xian office beginning in 2007. It is admitted that Defendant Jason Li reported to Defendant Teng Li. All other allegations are denied.

50. It is admitted that Red F did not offer pre-mover services and did not have facilities in China before January 2010. All other allegations are denied. It is specifically denied that Answering Defendants conspired to "raid" Plaintiff Bridgetree's employees, information, and/or trade secrets.

51. It is admitted that Defendant Target Point, LLC, filed its articles of incorporation with the North Carolina Secretary of State on August 24, 2009. It is also admitted that Answering Defendants Epperly and Roselli met with Mark Beck. It is also admitted upon information and belief that Vision Marketing is not currently a customer of Plaintiff Bridgetree because Mark Beck changed the terms of the relationship between the companies. All other allegations are denied. It is specifically denied that Answering Defendants entered into a conspiracy to "raid" Plaintiff Bridgetree's employees, information, and/or trade secrets.

52. Denied. It is specifically denied Answering Defendants Epperly and Roselli did not disclose the purpose of the meeting to Mark Beck, which was to discuss

possible collaboration between Plaintiff Bridgetree and Answering Defendants, or that Answering Defendants somehow misled Mark Beck about the nature of Defendant Target Point, LLC.

53. It is admitted that Answering Defendants Teng Li and Epperly played golf on or about November 8, 2008. All other allegations are denied.

54. Denied.

55. It is admitted that Defendant Teng Li met with Sara Garces. All other allegations are denied.

56. It is admitted upon information and belief that Defendant Scripter was employed by IBM. It is admitted that IBM was soliciting bids for one of its customer's projects. All other allegations are denied. It is specifically denied that Bridgetree was a potential vendor for the project; indeed, it was not even one of the seven or more companies asked to provide a bid for the project.

57. It is admitted that Answering Defendants Teng Li, Epperly, and Roselli met with Defendant Scripter in public at the Brio Tuscan Grille. All other allegations are denied.

58. Denied.

59. Denied.

60. It is admitted that Defendant Teng Li called Mark Beck on or about January 4, 2010, to resign from Plaintiff Bridgetree. It is also admitted that Defendant Teng Li's last day as an employee of Plaintiff Bridgetree was on or about January 5, 2010, and that Defendant Teng Li offered to consult on an hourly basis for a short period

of time so that Defendant Teng Li's departure from Plaintiff Bridgetree would go smoothly. All other allegations are denied.

61. It is admitted that Defendant Teng Li returned two laptops to Plaintiff Bridgetree, one on or about January 6, 2010, and the other on or about January 7, 2010. All other allegations are denied.

62. It is admitted that Defendant Teng Li accessed files on his laptop in order to answer questions of Plaintiff Bridgetree's employees as he was transitioning out of Plaintiff Bridgetree's employment. All other allegations are denied.

63. Denied.

64. Denied.

65. Denied.

66. Denied upon information and belief.

67. Denied upon information and belief.

68. It is admitted upon information and belief that Jason Li resigned from Bridgetree Xian. Except as admitted, the allegations of this paragraph are denied for lack of information.

69. Denied.

70. It is admitted upon information and belief that Red F Xian began operation on or about January 10, 2010, and that it is located approximately 400-500 yards from Plaintiff Bridgetree's Xian office because Teng Li's mother lives in an apartment a block from the office. Except as admitted, the allegations of this paragraph are denied.

71. Denied.

72.     It is admitted that Defendant Teng Li followed security protocols in deleting certain password related files. It is also admitted that Defendant Teng Li deleted personal files and emails, along with old version files. All other allegations are denied.

73.     Denied.

74.     Denied.

75.     It is admitted that Red F announced the opening of an office in Xian, China, on or about January 20, 2010. Among the new employees, there were former Bridgetree employees. All other allegations are denied.

76.     Admitted.

77.     It is admitted that Red F did not offer pre-mover services before Defendant Teng Li's employment with Red F. All other allegations are denied.

78.     It is admitted that there was an article concerning Red F in the *Mecklenburg Times* on or about January 20, 2010. The content of the article speaks for itself, and all allegations concerning that content are denied.

79.     Denied.

80.     Denied.

81.     Denied.

82.     Denied for lack of information.

83.     Denied for lack of information.

84.     Denied.

85.     Denied for lack of information.

86.     Denied for lack of information.

87.     Denied for lack of information.

88.    Denied.

89.    It is admitted that Defendant Roselli left his employment with Bank of America in 2003 and that he acquired Red F in 2005. All other allegations are denied.

90.    Denied.

91.    Denied.

92.    It is admitted that Defendant Epperly sent an email to Mark Beck regarding possible collaboration between Mark Beck and Defendant Roselli. All other allegations are denied.

93.    It is admitted that Teng Li cannot recall whether or not he bookmarked RedF in his computer. Except as admitted, the allegations of this paragraph are denied.

94.    It is admitted that Defendant Target Point, LLC, filed its articles of incorporation with the North Carolina Secretary of State on August 24, 2009. It is also admitted that Answering Defendants Epperly and Roselli met with Mark Beck. All other allegations are denied.

95.    It is admitted that the domain name targetpoint.us was registered with godaddy.com on or about October 23, 2009. All other allegations are denied.

96.    It is admitted that Answering Defendants Teng Li and Epperly played golf on or about November 8, 2009. All other allegations are denied.

97.    Denied.

98.    Denied.

99.    It is admitted that Defendant Teng Li sent an email to Sara Garces as a part of Defendant Teng Li's interview process with Red F. All other allegations are denied.

100.     It is admitted that Defendant Scripter sent an email concerning a request for information ("RFI"). All other allegations are denied.

101.     It is admitted that Answering Defendants Roselli and Epperly corresponded with Defendant Epperly about a conference call. All other allegations are denied.

102.     It is admitted that there was a conference call among representatives of numerous companies to discuss the bidding process on an IBM project in which individuals were requested to use their first names. This request came from IBM's client, not Answering Defendants, and upon information and belief was an attempt to reduce confusion between participants on the call. All other allegations are denied.

103.     It is admitted that Answering Defendants Teng Li, Epperly, and Roselli met with Defendant Scripter at the Brio Tuscan Grille. All other allegations are denied.

104.     Denied.

105.     Denied.

106.     It is admitted that Defendant Teng Li has had communications with Mali Xu and Jason Li on Bridgetree work related issues. All other allegations are denied.

107.     Denied.

108.     It is admitted that Defendant Teng Li has had communications with Mali Xu and Jason Li on RedF work related issues, including the Xian RedF office. All other allegations are denied.

109.     It is admitted that Defendant Teng Li called Mark Beck on or about January 4, 2010, to resign from Plaintiff Bridgetree. All other allegations are denied.

110.     Denied.

111. It is admitted that Defendant Teng Li worked in coordination with Defendants Mali Xu and Jason Li when they were employed by Plaintiff Bridgetree. All other allegations are denied.

112. Denied for lack of information.

113. Denied for lack of information.

114. It is admitted upon information and belief that Mali Xu requested Plaintiff Bridgetree sign an accounting document in accordance with local Chinese government rules. All other allegations are denied. The allegation of an alleged conspiracy or wrongful conduct is specifically denied.

115. Denied.

116. Denied.

117. Denied.

118. Denied.

119. Denied.

120. Denied.

121. Denied.

122. Denied for lack of information.

123. Denied.

124. Denied.

125. Denied.

126. Denied.

127. Denied for lack of information.

128. Denied.

129.     It is admitted that as part of compensation with Plaintiff Bridgetree, Defendant Teng Li was granted a 1% ownership share of Plaintiff Two Bit Dog, LLC, although Defendant Teng Li has never received any shares for this granted ownership. It is also admitted that Defendant Teng Li participated in the process of incorporating of Cartoon Networks, LLC but Defendant Teng Li declined the opportunity because of the terms demanded by the persons in control, Mark Beck and Mr. Leonardi. All other allegations are denied for lack of information.

130.     It is admitted that Defendant Teng Li is no longer working on Two Bit Dog projects. All other allegations are denied.

131.     It is admitted upon information and belief that Two Bit Dog has a working relationship with Bridgetree. All other allegations are denied.

132.     Denied.

133.     Denied.

## FIRST CLAIM FOR RELIEF

134.     Answering Defendants' responses to paragraphs 1-133 are incorporated herein by reference.

135.     Denied.

136.     Denied.

137.     Denied.

138.     Denied.

139.     Denied.

140.     Denied.

141.     Denied.

142.    Denied.

## SECOND CLAIM FOR RELIEF

143.    Answering Defendants' responses to paragraphs 1-142 are incorporated herein by reference.

144.    This paragraph contains a legal assertion to which no response is required. To the extent a response is required, the allegations are denied.

145.    Admitted.

146.    Denied.

147.    Denied.

148.    Denied.

149.    Denied.

150.    Denied.

151.    Denied.

## THIRD CLAIM FOR RELIEF

152.    Answering Defendants' responses to paragraphs 1-151 are incorporated herein by reference.

153.    Denied.

154.    Denied.

## FOURTH CLAIM FOR RELIEF

155.    Answering Defendants' responses to paragraphs 1-154 are incorporated herein by reference.

156.    Denied.

157.    Denied.

## FIFTH CLAIM FOR RELIEF

158.    Answering Defendants' responses to paragraphs 1-157 are incorporated

herein by reference.

159.    Denied.

160.    Denied.

161.    Denied.

162.    Denied.

163.    Denied.

164.    Denied.

165.    Denied.

166.    Denied.

## SIXTH CLAIM FOR RELIEF

167.    Answering Defendants' responses to paragraphs 1-166 are incorporated

herein by reference.

168.    Denied.

169.    Denied.

170.    Denied.

171.    Denied.

## SEVENTH CLAIM FOR RELIEF

172.    Answering Defendants' responses to paragraphs 1-171 are incorporated

herein by reference.

173.    Denied.

174.    Denied.

175. Denied.

176. Denied.

177. Denied.

## EIGHTH CLAIM FOR RELIEF

178. Answering Defendants' responses to paragraphs 1-177 are incorporated herein by reference.

179. Denied.

180. Denied.

181. Denied.

182. Denied.

183. Denied.

## NINTH CLAIM FOR RELIEF

184. Answering Defendants' responses to paragraphs 1-183 are incorporated herein by reference.

185. This paragraph contains legal assertions to which no response is required. To the extent a response is required, the allegations are denied. All other allegations are denied.

186. Denied.

187. Denied.

## PLAINTIFFS' PRAYER FOR RELIEF

Answering Defendants deny that Plaintiff is entitled to any of the relief requested in the Complaint.

## GENERAL DENIAL

Answering Defendants deny each allegation of the Complaint that is not explicitly admitted.

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

The Complaint fails to state a claim upon which relief can be granted.

### SECOND DEFENSE

Plaintiffs are estopped from seeking to enforce their alleged trade secrets by, among other things, failing to take reasonable efforts to maintain their secrecy and/or voluntarily disclosing their alleged trade secrets.

### THIRD DEFENSE

Plaintiffs alleged trade secrets are generally known or readily ascertainable through independent development or reverse engineering.

### FOURTH DEFENSE

Defendant Teng Li brought only his own general knowledge, skills, and experience to Red F, not any of Plaintiffs' alleged trade secrets.

### FIFTH DEFENSE

Plaintiffs' action is barred by the doctrine of laches because, among other things, Answering Defendants have been prejudiced by Plaintiffs' delay in bringing this action.

### SIXTH DEFENSE

Plaintiffs' action is barred by the doctrine of waiver.

## COUNTERCLAIMS

Defendants RedF, Target Point, LLC ("Target Point"), Teng Li, Dan Roselli and Mark Epperly counterclaim against Bridgetree, Inc. ("Bridgetree") and complain against the additional Counterclaim Defendants Mark Beck and Chris Talley as follows:

1.      With no reasonable cause or belief in the truth of their claims and/or knowing the true facts to be otherwise, the Counterclaim Defendants Mark Beck, Chris Talley and Bridgetree have pursued and continue to pursue a campaign and scheme to falsely smear and accuse RedF, Target Point, Teng Li, Dan Roselli and Mark Epperly of wrongdoing with the specific intent to libel, slander and harm their reputations and business.  Mark Beck has extended this campaign even to harming Teng Li's 14 year old daughter by defaming Teng Li to Charlotte Latin School so that the school would refuse to honor its earlier admission of Teng Li's daughter to the school.

2.      Accordingly, the Counterclaim Plaintiffs assert the following claims for intentional interference with commercial relations and unfair trade practices against Mark Beck, Chris Talley and Bridgetree and Teng Li asserts the following claims for defamation and intentional infliction of emotional distress against Mark Beck.

### Jurisdiction, The Parties, and Venue

3.      These Counterclaims are asserted pursuant to Rules 13, 19 and/or 20 of the Federal Rules of Civil Procedure and the supplemental jurisdiction of this Court pursuant to 28 U.S.C. § 1367 for monetary relief and injunctive relief as more fully described below.

4. Bridgetree is, upon information and belief based on its own allegation, a privately held corporation organized under the laws of North Carolina and then relocated to South Carolina.

5. Mark Beck is, upon information and belief, a resident of North Carolina. Mr. Beck substantially owns and controls Bridgetree.

6. Chris Talley is, upon information and belief, a resident of North Carolina and a high-ranking executive at Bridgetree.

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391 because the defendants are subject to personal jurisdiction in this judicial district and therefore reside in this district pursuant to 28 U.S.C. § 1391(c).

### Bridgetree, Beck and Talley's Wrongful Acts

8. The response of the Counterclaim Plaintiffs to the Complaint set forth above is realleged and incorporated by reference.

9. For over a year prior to Teng Li's departure from Bridgetree, Mr. Li discussed his dissatisfaction with his situation at Bridgetree with Mark Beck. Beck refused to grant Mr. Li the very small (even 1%) ownership interest in Bridgetree sought by Mr. Li. Therefore, Beck was not surprised or certainly should not have been surprised when Mr. Li resigned in early January 2010. In fact, Beck quickly agreed to Teng Li's departure when he resigned.

10. After Teng Li's departure from Bridgetree, Mr. Beck made numerous threats to Teng Li through Teng Li's friends and former colleagues to discourage them from working with Teng, even though Teng Li had not signed a non-compete agreement with Bridgetree. For example, upon information and belief under Beck's influence, one of Teng Li's former colleagues called Teng Li and stated "Do you know that you are in a

sea of pain! Mark has a lot of money and he can hire all the lawyers in the world to cause pain to you." During the conversation, she mistakenly called Teng Li 'Mark' several times, apparently because she had just been coached by Beck on what to say. On another occasion, when Teng Li called Mr. Leonardi to ask about Teng Li's vested shares in Two Bit Dog LLC, Mr. Leonardi threatened Teng Li, stating that "Mark has a lot of money, in a civil lawsuit; you cannot afford lawyers so you will lose in the end."

11. Bridgetree employees raised no issues with Mr. Li about trade secrets or the alleged absence of any computer drives or other information when he returned the drives and his company computers shortly following his resignation.

12. Later, Mark Beck and Bridgetree made accusations against Teng Li in connection with Bridgetree and his departure from the company. On January 21, 2010, at Bridgetree's request, Mr. Roselli and John McDonald (RedF's counsel) travelled to Mooresville, NC to meet with Mark Beck and Bridgetree's counsel to learn about the alleged facts supporting any allegations against Teng Li. Although "proof" of wrongdoing was supposedly to be shown to RedF at this meeting, none was provided. Th

13. Roselli asked Beck and Bridgetree's counsel to let him know as soon as possible if any facts were found to support Bridgetree's suspicions so that RedF and Teng would have an opportunity to respond. Bridgetree said it would do so.

14. Bridgetree and Beck did not communicate with RedF or Teng Li regarding any alleged wrongdoing during all of February, March, and April and most of May, 2010.

15. In the evening of May 18, 2010 Bridgetree – without first making any effort to talk with RedF as it had promised it would - filed the Complaint in this action alleging claims based on the alleged activities over five months earlier.

16.     The allegations of wrongful conduct in the Complaint are false as set forth in the Answer above and the claims are meritless.

17.     Beck and Bridgetree knew the accusations of the Complaint and other accusations made outside the complaint were false when made or were so reckless as to their truth or falsity that the accusations were made in bad faith and with malice.

18.     For example, Bridgetree and Beck knew or were reckless in not knowing that:

•       Teng Li had already returned the computer disk drives he is alleged to have taken.

•       Roselli and Epperly told Beck about RedF's intended business during their August 2009 meeting.

•       Bridgetree, Beck and Talley had no evidence of a "conspiracy" among the defendants beginning in the summer of 2009.

•       Bridgetree, Beck and Talley knew or were reckless in not knowing that Mali Xu did not take any computer from Bridgetree and that she was only following Chinese law and custom in her requests to Bridgetree related to accounting information.

•       Bridgetree was not among the seven or more companies bidding on the IBM project at issue (and therefore was not a competitor for the work) and that IBM never even awarded the project to any company (much less RedF); and

•       Bob Yuan (the former Bridgetree China employee who Bridgetree alleges was "hacking" into a Bridgetree database on behalf of RedF) had been or was already being recruited back to Bridgetree as part of an effort to take employees from RedF Xian in China.

19. Bridgetree and Beck's decision to file the Complaint and otherwise make accusations against the defendants was thus based not on their belief in the truth of the claims but instead was part of a scheme and plan to smear the reputations of the defendants and harm RedF's small, young business.

20. In furtherance of this scheme and plan, even before serving the Complaint on RedF's counsel (whose office is in the same building as Bridgetree's counsel), Beck arranged for Chris Talley, one of Bridgetree's executives who is serving as the President of the influential Charlotte Direct Marketing Association ("CDMA"), to send the entire Board of Directors of the CDMA an email concerning the allegations of this action (and specifically naming Teng Li and RedF). The email also stated falsely that Bridgetree did not seek the lawsuit, which it did without any attempt to discuss the specifics of its allegations with RedF as it said it would do months before. Further, the email falsely claimed that Bridgetree "must take action to defend our company and our employees well being." The email provided a link to the full 46 page complaint.

21. Talley had no legitimate reason or privilege to use his position as President of the CDMA to harm Teng Li and RedF. In fact, in the email to the CDMA Board of Directors he acknowledged (twice) that the lawsuit would "not impact the CDMA in any way." The sole purpose of the email sent by Talley, at Beck and Bridgetree's direction, was to injure the Counterclaim Plaintiffs' reputations and use the false accusations to unfairly harm RedF's business and help Bridgetree's business.

22. At the time of his email to the CDMA Board of Directors, Talley knew the accusations of the Complaint were false when made or was so reckless as to their truth or

falsity such that he (acting on the request and/or encouragement of Beck) republished the claims in bad faith and with malice.

23.     Further, before making any attempt to serve the lawsuit, Beck and /or Talley made false accusations of wrongdoing against the Defendants and sent the Complaint to a reporter for the Charlotte Business Journal and, upon information and belief, encouraged the reporter to call the Defendants seeking comment on the allegations before they had even seen the Complaint.  Indeed, Defendant Epperly learned of the lawsuit first from a Charlotte Business Journal reporter.

24.     Since the filing of the Complaint, Bridgetree, Beck and Talley have, upon information and belief, made, repeated and republished false accusations of wrongdoing against the Counterclaim Plaintiffs to RedF and /or Target Point's current and potential customers, vendors, lenders, and others having business relationships with any of the Counterclaim Plaintiffs in an effort to harm their businesses and reputations.

25.     Mark Beck has further defamed and intentionally inflicted emotional distress on Teng Li and his family in a despicable effort to harm Teng Li and his young daughter.

26.     Teng Li's daughter ("Daughter Li") is a 14 year old honor student and accomplished athlete who is entering her first year of high school this fall. In March 2010, she was accepted into the rising 9th grade class at Charlotte Latin School ("Charlotte Latin").

27.     Teng Li and his wife accepted Charlotte Latin's offer of admission and paid the appropriate fees. Daughter Li excitedly told her friends she was going to Charlotte Latin, and she and her family made plans to start school in August.

28.     Mark Beck's children attend Charlotte Latin (in different grades than Teng Li's daughter) and upon information and belief he is a financial donor to the school. In June 2010, several months after Daughter Li had been accepted into Charlotte Latin, Beck contacted the Headmaster of the school, Arch N. McIntosh, Jr., and defamed Teng Li.

29.     Mr. Beck called Teng Li a "liar, scoundrel and thief" to Mr. McIntosh and Charlotte Latin. Beck requested that Charlotte Latin not allow Daughter Li to attend the school.

30.     Without making any effort to talk to Teng Li, Teng Li's wife or Daugheter Li, Mr. McIntosh and Charlotte Latin (apparently eager to appease one of its donors despite the obvious harm to Daughter Li and the reputation of Teng Li and his family) informed Teng Li by email on June 30, 2010 that despite its earlier acceptance of Daughter Li into the 9th grade class, she would not be permitted to attend Charlotte Latin based on the allegations of "serious misconduct" against Teng Li.

31.     Following this stunning news to the Li family, Mr. McIntosh referred all inquires to Moore & Van Allen, counsel for Charlotte Latin (and the Plaintiffs in this action).

32.     Mark Beck intended to harm Teng Li's reputation in the community and cause him and his family emotional harm through this attack on Daughter Li's ability to attend her chosen school.

## First Cause of Action

### Tortious Interference with Current and Prospective
### Contractual Relations and Commercial Advantage

33. The allegations of the preceding paragraphs are realleged and incorporated in this claim for relief by reference.

34. The foregoing conduct by Bridgetree, Beck and Talley was intended to cause the termination of or harm to RedF and Target Point's business relationships with one or more of their current and potential customers, vendors, lenders, or others having business relationships with them or with one or more of the individual Counterclaim Plaintiffs.

35. Bridgetree, Beck and Talley's conduct was and is without privilege or justification.

36. Upon information and belief, Bridgetree, Beck and Talley had an improper motive and/or used improper means to interfere with these business relations.

37. As a consequence of the foregoing and if this conduct continues, the Counterclaim Plaintiffs have suffered and/or will suffer irreparable harm and loss.

38. The Counterclaim Plaintiffs have no adequate remedy at law.

39. Based on this unlawful conduct, the Counterclaim Plaintiffs are entitled to a temporary and permanent injunction enjoining Bridgetree, Beck and Talley from unlawfully interfering with the Counterclaim Plaintiffs relations with their current and potential customers, vendors, lenders, or others having business relationships with them.

40. To the extent, if any, that Bridgetree, Beck and Talley have benefited from asserting, otherwise claiming or seeking to benefit from their interference with the Counterclaim Plaintiffs' relations with their current and potential customers, vendors,

lenders, or others having business relationships with them then they should be required to account for and disgorge any benefit they have received.

41.     The Counterclaim Plaintiffs are entitled to punitive damages to redress and punish the Counterclaim Defendants' wrongful conduct described above.

## Second Cause of Action

## Defamation

42.     The allegations of the preceding paragraphs are realleged and incorporated in this claim for relief by reference.

43.     Mark Beck made oral and/or written statements to Arch McIntosh and, upon information and belief, other persons associated with Charlotte Latin, that tended to harm Mr. Li's reputation as an honest and trustworthy professional and businessman, subject Mr. Li to ridicule, contempt and/or disgrace; harm and impeach him in his trade or profession and/or charge him with the commission of a punishable offense.

44.     These statements were false.

45.     Mark Beck made these false statements with knowledge of their falsity, without a good faith belief in their truthfulness, or negligently. So, Mr. Beck had no cause or privilege to make these statements to Charlotte Latin.

46.     Teng Li and his family have suffered damages as a result of these false and defamatory statements.

47.     Teng Li is entitled to punitive damages to redress and punish Mark Beck's wrongful conduct described above.

### Third Cause of Action

### Unfair Trade Practices

48.     The allegations of the preceding paragraphs are realleged and incorporated in this claim for relief by reference.

49.     Bridgetree, Beck and Talley's unlawful and wrongful activities described herein are unfair methods of competition, unfair and deceptive acts or practices, and unconscionable business conduct, all in violation of the common law and Chapter 75 of the North Carolina General Statutes.

50.     Those actions were "in or affecting commerce" in North Carolina as that phrase is defined by N.C. Gen. Stat. § 75-1.1 because Bridgetree, Beck and Talley's conduct was intended to harm and harmed the Counterclaim Plaintiffs in North Carolina, where they live or have their principal place of business.

51.     Bridgetree, Beck and Talley's unfair trade practices have directly and proximately caused or will directly and proximately cause damage to the Counterclaim Plaintiffs' goodwill and commercial relationships, damage to their business reputation and lost business opportunity.  The full extent of the injuries caused by Bridgetree, Beck and Talley's wrongful conduct is incapable of exact proof at this time.

52.     Pursuant to N.C. Gen. Stat. § 75-16, the Counterclaim Plaintiffs are entitled to treble their actual damages.  Pursuant to N.C. Gen. Stat. § 75-16.1, the Counterclaim Plaintiffs are entitled to their reasonable attorney's fees incurred in the defense of and prosecution of their claims in this action.

53.     As a consequence of the foregoing, the Counterclaim Plaintiffs have suffered and will continue to suffer irreparable harm and loss.

## Fourth Cause of Action

## Intentional Infliction of Mental Distress

54. The allegations of the preceding paragraphs are realleged and incorporated in this claim for relief by reference.

55. Mark Beck's successful effort to deny Teng Li's daughter the opportunity to attend school at Charlotte Latin in an effort to harm and pressure him and his family is outrageous conduct that exceeds the bounds of decency.

56. This conduct was intended to cause mental and emotional distress or undertaken with reckless indifference to the likelihood that it would cause emotional distress.

57. Teng Li and his family have suffered emotional distress as a result of Mark Beck's actions.

58. Teng Li is entitled to punitive damages to redress and punish Mark Beck's wrongful conduct described above.

## PRAYER FOR RELIEF

WHEREFORE, Answering Defendants seek the following relief:

1. That the Complaint be dismissed with prejudice and that Plaintiffs take nothing;

2. That Judgment be entered in favor of the Counterclaim Plaintiffs against Counterclaim Defendants Bridgetree, Beck and Talley and that they be ordered to pay to the Counterclaim Plaintiffs all monetary damages owed to them, including compensatory, incidental, statutory, punitive and any other damages suffered by them and disgorge any benefits received as a result of their wrongful conduct;

3.     That Plaintiffs be restrained from further prosecuting or instituting any action against Answering Defendants on the alleged basis that Answering Defendants have misappropriated Plaintiffs' alleged trade secrets.

4.     That the Court grant Answering Defendants such other relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Answering Defendants demand a trial by jury on all issues triable of right by a jury that are raised for determination by Plaintiffs' Complaint or by Answering Defendants' defenses or Counterclaims.

This the 21st day of July 2010.

/s/ Irving M. Brenner
Irving M. Brenner
Steven N. Baker
John G. McDonald
McGUIREWOODS LLP
100 North Tryon Street, 29th Floor
(28202)
Post Office Box 31247
Charlotte, NC  28231
Telephone: (704) 343-2075
Facsimile:  (704) 373-8935
Email:
ibrenner@mcguirewoods.com
Email:
sbaker@mcguirewoods.com
Email:
jmcdonald@mcguirewoods.com
*Attorney for Answering Defendants*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification to the following parties in this case:

J. Mark Wilson
Moore & Van Allen PLLC
Suite 4700
100 North Tryon Street
Charlotte, NC 28202-4003
Telephone (704) 331-1000
Facsimile (704) 339-5981
Email: markwilson@mvalaw.com

Kathryn G. Cole
Moore & Van Allen PLLC
Suite 4700
100 North Tryon Street
Charlotte, NC 28202-4003
Telephone (704) 331-1000
Facsimile (704) 339-5981
Email: katecole@mvalaw.com

Steven C. Schroer
Fitch, Even, Tabin & Flannery
1942 Broadway, Suite 213
Boulder, Colorado 80302
Telephone: (303) 402-6966
Facsimile: (303) 402-6970
Email: scschr@fitcheven.com

Christian R. Eriksen
Fitch, Even, Tabin & Flannery
One Lafayette Center, Suite 750S
1120 20th Street, NW
Washington, DC 20036
Telephone: (202) 419-7000
Facsimile: (202) 419-7007
Email: ceriksen@fitcheven.com

*Attorneys for the Plaintiffs*

Edward W. Gray
Fitch, Even, Tabin & Flannery
One Lafayette Center, Suite 750S
1120 20th Street, NW
Washington, DC 20036
Telephone: (202) 419-7000
Facsimile: (202) 419-7007
Email: egray@fitcheven.com

*Attorney for the Plaintiffs*

Louis Adams Bledsoe , III
Robinson, Bradshaw & Hinson, P. A.
101 North Tryon St.
Suite 1900
Charlotte, NC 28246
704-377-8339
Fax: 704-373-3939
Email: lbledsoe@rbh.com

*Attorney for Defendant Elton T. Scripter*

This the 21st day of July, 2010.

/s/ Irving M. Brenner
Irving M. Brenner
McGUIREWOODS LLP
100 North Tryon Street, 29th Floor  (28202)
Post Office Box 31247
Charlotte, NC  28231
Telephone: (704) 343-2075
Facsimile:  (704) 373-8935
Email: ibrenner@mcguirewoods.com
*Attorney for Answering Defendants*

- 32 -