# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
Civil Action No.: 3:10-cv-228-FDW-DSC

BRIDGETREE, INC., and
TWO BIT DOG, LLC,

    Plaintiffs,

vs.

RED F MARKETING LLC, TARGET POINT, LLC, DANIEL ROSELLI, TENG LI, JASON LI, MALI XU, MARK EPPERLY, and ELTON T. SCRIPTER,

    Defendants.

ORDER

THIS MATTER comes now before the Court upon Defendant Elton T. Scripter's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) Plaintiffs' claims for violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(c) and (d) ("RICO"); violation of the North Carolina Unfair and Deceptive Trade Practices Act, N.C.G.S. § 75.1-1, *et seq.*, ("UDTPA"); and for common law civil conspiracy. (Doc. No. 26). For the reasons set forth, Scripter's Motion to Dismiss Plaintiffs' claims is DENIED.

**I. BACKGROUND**

Bridgetree, Inc. ("Bridgetree"), a provider of marketing data and logistics services, and Two Bit Dog, LLC ("Two Bit Dog"), an affiliated web marketer of pet products, brought this action against former Bridgetree employees (Teng Li, Jason Li, and Mali Xu); competitor Red F Marketing, LLC ("Red F"); Red F President Daniel Roselli; Red F affiliate Target Point, LLC ("Target Point"); Target Point President Mark Epperly; and Elton T. Scripter, a former Bridgetree employee who is now an Advanced Analytics and Optimization Manager with IBM Business

Service.[1] Following service of the Complaint, Scripter moved to dismiss Plaintiff's three claims against him under Federal Rule of Civil Procudure 12(b)(6) for failure to state a claim upon which relief can be granted.

## II. ANALYSIS

**A.  Standard of Review**

The purpose of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) is to test the legal sufficiency of the complaint, not to resolve conflicts of fact or to decide the merits of the action.  Edwards v. City of Goldsboro, 178 F.3d 231, 243-44 (4th Cir. 1999).  In considering a motion to dismiss, the Court need not accept as true allegations from the complaint that merely state legal conclusions.  Ashcroft v. Iqbal, ___U.S.___, 129 S. Ct. 1937, 1950 (2009).  Yet, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  Id.

**B.  Civil RICO and Conspiracy Claims**

The RICO Act provides a civil right of action against anyone associated with an enterprise engaged in or affecting interstate commerce who either directly or indirectly participates in "a pattern of racketeering activity" through such enterprise or who conspires to commit a RICO violation.  18 U.S.C. §§ 1962(c)-(d).  The United States Code includes in the definition of "racketeering activity" any act indictable as mail or wire fraud.  18 U.S.C. § 1961(1)(B).  The Supreme Court has held that courts should apply common law principles of civil conspiracy to civil RICO actions and that parties to an illegal agreement may be held liable under RICO where the

---

[1]Plaintiffs' claims total nine, three of which are against Defendant Scripter.  The other six claims include misappropriation of trade secrets, state and federal statutory claims for computer trespass and fraud, conversion, violation of the Digital Millennium Copyright Act, 17 U.S.C. § 1201, and breach of Teng Li's fiduciary duty to both Bridgetree and Two Bit Dog (of which Li is an LLC member).

plaintiff's injury results from any conspirator's tortious conduct. Beck v. Prupis, 529 U.S. 494, 503 (2000); see also Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, ___, 128 S. Ct. 2131, 2140 (2008). In North Carolina, a complaint states a claim for civil conspiracy when it alleges: (1) a conspiracy; (2) "wrongful acts done by certain of the alleged conspirators in furtherance of that conspiracy;" and (3) "injury as a result of that conspiracy." State ex rel. Cooper v. Ridgeway Brands Mfg., LLC, 666 S.E.2d 107, 115 (N.C. 2008) (citing Muse v. Morrison, 66 S.E.2d 783, 785 (N.C. 1951)).

      *i.     Conspiratorial conduct*

Scripter argues that Plaintiffs' RICO and conspiracy claims fail for insufficient pleading. "'[C]onspiracy' is generally defined to be 'an agreement between two or more individuals to do an unlawful act or to do a lawful act in an unlawful way.'" Muse, 66 S.E.2d at 784 (quoting State v. Dalton, 83 S.E. 693, 694 (N.C. 1914)). To be liable to Plaintiffs as a conspirator, Scripter need not have engaged directly in any injurious acts, as "[o]ne can be a conspirator by agreeing to facilitate only some of the acts leading to the substantive offense." Salinas v. United States, 522 U.S. 52, 65 (1997).

Scripter argues that Plaintiffs fail to adequately plead conspiracy claims against him under RICO and common law because he is not alleged to have raided Bridgetree's offices, stolen confidential information, or caused Bridgetree any damage. However, the settled law of conspiracy is that "[everyone] who does enter into a common purpose or design is equally deemed in law a party to every act which had before been done by the others, and a party to every act which may afterwards be done by any of the others in furtherance of such common design." Muse, 66 S.E.2d at 785 (internal citations omitted). Similarly, "[t]he interplay between subsections (c) and (d) [of 18 U.S.C. § 1962] does not permit us to excuse from the reach of the conspiracy provision an actor

who does not himself commit or agree to commit the two or more predicate acts requisite to the underlying offense." Salinas, 522 U.S. at 65.

Here, Plaintiffs allege that, through email correspondence, telephone communications, and at least one in-person meeting in late December 2009, Scripter contributed to a plan by Epperly, Roselli, and Teng Li[2] to misappropriate Bridgetree's trade secrets and proprietary data for the benefit of Red F and Target Point. Plaintiffs specifically allege that Scripter assisted by disclosing non-public information about Red F competitors to Epperly, Roselli, and Teng Li. Plaintiffs further allege Scripter's encouragement provided the impetus for Red F to pursue near-term opportunities at IBM that Scripter knew would require more advanced capabilities than Red F possessed—capabilities he also knew Li helped develop for Bridgetree over a period of several years. According to the Complaint, these Defendants together sought to illicitly use Teng Li's knowledge of Bridgetree trade secrets and protected data as well as his sway over Bridgetree's Xian, China, facility and employees to quickly jettison Red F to a more competitive industry position. Plaintiffs allege Scripter knowingly offered the enticement of an IBM deal to hasten Li's subsequent tortious conduct: his orchestration of massive theft of Bridgetree's proprietary data and source code; the defection of Bridgetree's key Xian staff to Red F; and his injurious abandonment of Two Bit Dog. Based on the facts alleged, the Court finds it plausible that Scripter provided inducement to a business deal that he likely knew could only come to fruition by tortious conduct.

ii.  *Common purpose*

Scripter argues that Plaintiffs' RICO claim is facially flawed because of a failure to allege

---

[2]Here and elsewhere in the Court's Order, reference to Epperly, Roselli, and Teng Li incorporates by inference Defendants Red F and Target Point to the extent that any conduct alleged was plausibly conducted in these individual Defendants' official capacities.

a "common purpose" with the Red F Defendants or to plausibly allege Scripter's motivation or perceived benefit of participation in the plot. Here, Scripter misinterprets the context in which "common purpose" defines the association necessary to state a RICO claim. The Supreme Court has held that "RICO reaches 'a group of persons associated together for a common purpose of engaging in a course of conduct.'" Boyle v. United States, ___U.S.___, 129 S. Ct. 2237, 2243 (2009). In Boyle, an appeal by a defendant in a criminal RICO case involving a series of bank robberies, the Court describes the criminal enterprise as having been comprised of "a core group, along with others who were recruited from time to time." Id. at 2241. The group was "loosely and informally organized," lacking "a leader or hierarchy," and "[n]ever formulated any long-term master plan or agreement." Id. The Boyle court noted that "[w]hile the group must function as a continuing unit and remain in existence long enough to pursue a course of conduct, nothing in RICO exempts an enterprise whose associates engage in spurts of activity punctuated by periods of quiescence." Id. at 2245. Considering the Court's conclusions in Boyle, the only "common purpose" thus required to plausibly plead a RICO association under 18 U.S.C. 1962(c) and (d) is the intent of the RICO Defendants to participate in the implicated course of conduct.

First, Scripter need not have signed on to any "master plan" of Red F to be pled as a RICO defendant. The factual allegations that Scripter participated in email exchanges and telephone communications that may plausibly have included discussion of misappropriation of Bridgetree technology are sufficient to allow Plaintiffs' claims to move forward. Second, the Court disagrees with Scripter's assertion that Plaintiffs have failed to articulate a plausible motive for Scripter's involvement or that such a shortcoming of the Complaint would be determinative of whether Plaintiffs have sufficiently alleged Scripter's intent to join in the RICO Defendants' course of conduct. See Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's

mind may be alleged generally.")

   *iii.*  *Pattern of racketeering activity*

Citing the Fourth Circuit's decision in Flip Mortgage Corp. v. McElhone, a case decided at summary judgment, Scripter argues that a "single scheme perpetrated . . . against a single victim," cannot constitute a pattern of racketeering under the RICO Act. 841 F.2d 531, 538 (4th Cir. 1988). The Supreme Court has held that to prove a "pattern of racketeering activity" a plaintiff must show, at minimum, two related predicate acts of racketeering occurring within a ten year period which "amount to or pose a threat of continued criminal activity." H.J., Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 239 (1989). As Scripter correctly notes, both the Supreme Court and the Fourth Circuit have indicated that a period of conduct spanning three months or less, absent any threat of continuity into the future, falls outside the intended scope of the RICO Act. Id.; E. Pub. and Adver., Inc. v. Chesapeake Pub. and Adver., Inc., 895 F.2d 971, 972 (4th Cir. 1990).

Yet, where a threat of future criminal activity is plausibly alleged, the continuity requirement of RICO may be satisfied even if the defendants' criminal objective is otherwise limited in nature or quickly reaches fruition. H.J., Inc., 492 U.S. at 242. Taking Plaintiffs' well-pled allegations in the most favorable light, Red F continues to illicitly exploit Bridgetree's source code and other proprietary business assets—some of which may be copyright protected—as if the product of its own efforts. For this reason, and despite Scripter's arguments to the contrary, the Court finds Plaintiffs' allegations state a plausible threat of ongoing criminal conduct within the liberal pleading standard of the Federal Rules of Civil Procedure sufficient to withstand the present motion.

   *iv.*  *Two or more predicate acts*

Scripter posits that Plaintiffs have not alleged two predicate acts as required to state a RICO claim, arguing that the only misrepresentations made through Defendants' wire transmissions to

Bridgetree were: (1) an email from Epperly and Roselli to Bridgetree principal Mark Beck in August, 2009 (prior to Scripter's purported involved in the scheme), in which they falsely state their purpose for wishing to meet with Beck; and (2) Scripter's January 13, 2010, phone call to Beck in which he denied involvement in Teng Li's defection to Red F. The Court nevertheless finds other plausible allegations of fraudulent conduct in the Complaint. Under the RICO Act, wire fraud is defined as any interstate wire transmission of "writings, signs, signals, pictures, or sounds for the purpose of executing [a fraudulent] scheme or artifice." 18 U.S.C. §§ 1343, 1961(1)(B).

Drawing analogy from Supreme Court analysis of RICO mail fraud, the predicate wire transmissions need not themselves be fraudulent if Defendants used the interstate wires to perpetrate their fraudulent objective. See Schmuck v. United States, 489 U.S. 705, 715 (1989) ("In [Parr] the Court specifically acknowledged that 'innocent' mailings—ones that contain no false information—may supply the mailing element." (citing Parr v. United States, 363 U.S. 370, 390 (1960))). Plaintiffs allege Scripter participated in an interstate telephone conference in furtherance of Defendants' RICO conduct and aided in a plan that resulted in Teng Li's later call to China falsely instructing these employees to close Bridgetree's Xian facility. The Court, therefore, finds these allegations sufficient to describe two or more predicate acts as required to state a civil RICO claim.

  *v.* *Specificity under Rule 9(b)*

The Court recognizes the heightened pleading requirements for allegations of fraud, Fed. R. Civ. P. 9(b) ("a party must state with particularity the circumstances constituting fraud"), and is satisfied that Plaintiffs have supported their general allegation of wire fraud with sufficient factual allegations to withstand Scripter's motion. "A court should hesitate to dismiss a complaint under Rule 9(b) if the court is satisfied (1) that the defendant[s have] been made aware of the particular

circumstances for which [they] will have to prepare a defense at trial, and (2) that plaintiff[s have] substantial prediscovery evidence of those facts." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999).

Plaintiffs allege that: (1) Scripter used a private "Gmail" account to discuss a Red F bid for IBM work with Teng Li, Epperly, and Roselli; (2) these parties planned an "anonymous" teleconference on the subject, agreeing to use first names only; (3) they held such a teleconference through a New Jersey call-in number; and (4) they arranged an in-person meeting through an email in which Epperly referred to himself and the other three participants as "partners." Plaintiffs further allege that Teng Li carried out the plot to defraud Bridgetree of its Xian facility, assets, and employees via international wire communications. Additionally, Plaintiffs claim they undertook an extensive computer forensic investigation into Teng Li's Bridgetree laptop computer, which revealed theft of business assets Red F is now alleged to fraudulently represent as its own.

While some of Plaintiffs' allegations pertaining to the Defendants' fraud are advanced "upon information and belief," the Court may relax the particularity requirement of Rule 9(b) "where the matter pled is particularly within the knowledge of the defendant." Azurite Corp. Ltd. v. Amster & Co., 730 F.Supp. 571, 576 (S.D.N.Y. 1990); see also In re Cree, Inc. Sec. Litig., 2005 U.S. Dist LEXIS 21975, at *12 (M.D.N.C. Aug. 2, 2005) ("To determine 'whether the factual allegations support a reasonable belief that fraud occurred, courts should evaluate the facts alleged as a whole, evaluating the level of detail, number, and coherence and plausibility of the allegations . . . and any other factors.'" (quoting Adams v. Kinder-Morgan, Inc., 340 F.3d 1083, 1102-03 (10th Cir. 2003))).

From the facts alleged in the Complaint, the Court can properly infer Bridgetree has been deprived of access to additional facts connecting Scripter to the fraudulent closure of its Xian facility and Red F's misappropriation of proprietary Bridgetree technologies. Discovery places the burden

on Plaintiffs to bolster these, and other, allegations with additional factual support. The Court need not determine the ultimate merit of Plaintiffs' claims at the present juncture, Edwards, 178 F.3d at 243-44, and finds the circumstances of the alleged fraud sufficiently clear to put Scripter on notice of the circumstances he must defend.

**C.     UDTPA Claim**

Citing Coker v. DaimlerChrysler Corp., 617 S.E.2d 306 (N.C. App. 2005), Scripter argues Plaintiffs' UDTPA claim against him fails because they have not alleged any injury "fairly traceable" to his conduct. To state a claim under N.C.G.S. § 75-1.1, *et seq.*, Plaintiffs must plausibly allege: "(1) that defendants committed an unfair and deceptive act or practice; (2) in or affecting commerce; and (3) plaintiffs were injured thereby." Strates Shows, Inc. v. Amusements of America, Inc., 646 S.E.2d 418, 424 (N.C. App. 2007) (quoting Edwards v. West, 495 S.E.2d 920, 923 (N.C. App. 1998)). Plaintiffs must also allege sufficient facts to permit the inference that "they 'suffered actual injury as a proximate result of defendants' [unfair and deceptive act].'" Id.

To decide this question in Scripter's favor on a 12(b)(6) motion, however, would require the Court to make an improper factual determination as to the nature and extent of Scripter's contributions to the alleged deceptive course of conduct: "[w]hen the issue of whether a complaint states a claim upon which relief can be granted . . . is dependent on the development of facts . . . the jurisprudence of Rule 12(b)(6) requires postponement of any final determination on the issue." Teachers' Retirement Sys. v. Hunter, 477 F.3d 162, 170 (4th Cir. 2007).

Plaintiffs have sufficiently alleged deceptive acts in or affecting commerce, resulting in loss of commercial advantage and impact upon existing client work. The Court also notes that it has examined whether a non-competitor such as Scripter may be a proper defendant to a UDTPA claim, a question on which North Carolina case law is unclear. The Supreme Court of North Carolina has

nonetheless stated that "[u]nfair competition is not confined to the palming off by one competitor of his goods as the goods of another[, as t]he same wrongful result may be brought about by other means and practices." Henderson v. U.S. Fid. and Guar. Co., 488 S.E.2d 234, 240-41 (N.C. 1997) (quoting Extract Co. v. Ray, 20 S.E.2d 59, 62 (N.C. 1942) (citing Int'l News Serv. v. Associated Press, 248 U.S. 215 (1918))). Furthermore, "any party claiming to be exempt from the provisions of [section 75-1.1] shall have the burden of proof with respect to such claim." N.C.G.S. § 75-1.1(d); see also Winston Realty Co. v. G.H.G., Inc., 320 S.E.2d 286, 290-91 (N.C. App. 1984).

### III. CONCLUSION

For the reasons stated above, the Court DENIES Defendant Elton Scripter's Motion to Dismiss Plaintiffs' claims under Federal Rule of Procedure 12(b)(6). (Doc. No. 26).

IT IS SO ORDERED.

Signed: August 5, 2010

Frank D. Whitney
United States District Judge